**Charles S. HILL, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**No. CV 96–5246 JGD (CWx).**

United States District Court,
C.D. California,
Western Division.

March 13, 1997.

Daniel S. Gruber, Glenn R. Kantor, Gruber & Kantor, Glendale, CA, for plaintiff.

Peter H. Klee, Charles A. Danaher, Luce, Forward, Hamilton & Scripps, San Diego, CA, for defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

DAVIES, District Judge.

On March 10, 1997, the Defendant's Motion for Summary Judgment came on for hearing. After careful consideration of the written submissions of the parties and the oral argument of counsel, the Court hereby GRANTS the Motion.

*Background*

The Plaintiff filed this action on July 29, 1996. The Defendant was the Plaintiff's insurer with regard to certain property. The Plaintiff seeks damages based on the Defendant's purported breach of the insurance contract and breach of the covenant of good faith and fair dealing.

The Plaintiff owns a residence located in Canoga Park, California. On January 17, 1994, the Northridge earthquake struck Southern California. At that time, the Plaintiff was living in New Mexico, but residing temporarily in Houston, Texas. The property at issue was being occupied by tenants. Immediately after the earthquake, either that day or the next day, the Plaintiff phoned the tenants to inquire about the damage. The Plaintiff was informed that the water heater had fallen over and items had fallen from shelves, "but there was no big cracks [sic] or ... no major big problems." Mot. Exh. 4 at 35. The Plaintiff did not inquire whether the tenants had done any sort of an inspection or walk through. Gruber Decl. Exh. 3. at 22. Two or three days after the earthquake, the Plaintiff's son went to the property. The Plaintiff's son was informed of the problem with the water heater. He was also made aware that there was a problem with the back door and that a block wall on the property had shaken loose. Mot. Exh. 6. The Plaintiff's son did not ask whether the interior of the house had suffered any damage nor did he ask to go inside the house in order to inspect the interior for earthquake damage, even though he believed that the house had suffered earthquake damage. Mot. Exh. 8. The Plaintiff did not report the damage to the Defendant.

The Plaintiff did not enter the house until August, 1995, when the tenants vacated the residence. At that time, the Plaintiff noticed cracks in the bedroom ceiling and in the drywall. Gruber Decl. Exh. 5 at 27. Moreover, the Plaintiff's son, who had entered the house with his father, noticed a "substantial number" of cracks at the windows and around the doors, as well as in the ceiling and around the exterior of the stucco. Mot. Exh. 11 at 56. The Plaintiff did not report this damage to the Defendant and instead spackled and painted over the cracks. Gruber Decl. Exh. 5 at 27.

The Plaintiff re-entered the house in December, 1995, after the new tenants had been evicted. At that time he decided to replace the carpet. Upon lifting the carpet, cracks in the slab were discovered. Gruber Decl. Exh. 9 at 31. The Plaintiff informed the Defendant of the damage on January 2, 1996. According to the Plaintiff, the earthquake caused approximately $134,000 in damage to the residence. Mot. Exh. 15, 16. On February 2, 1996, the Defendant denied the Plaintiff's claim because, according to the Defendant, the claim was not timely made under the provisions of the policy. The instant Complaint followed.

*Discussion*

A. *Summary Judgment Standard*

The Federal Rules of Civil Procedure provide for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court clarified the standard for summary judgment in three important cases. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Whether a fact is material is determined by looking to the governing substantive law; a fact is material if it may affect the outcome of the suit. *Id.* at 248, 106 S.Ct. at 2510. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim

or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553–54; *see also* Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial §§ 14:123–141 (1993).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e). Summary judgment will be entered against the non-moving party, when appropriate, if that party does not present these specific facts. *Id.*

In assessing whether the non-moving party has raised a genuine issue, its evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14 (citing *Adickes v. S.H. Kress and Company*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient. *Id.* at 252, 106 S.Ct. at 2512. As the Court explained in *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

However, an alleged "genuine issue" will not defeat summary judgment where the factual context makes the non-movant's allegations implausible. *See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Consequently, where the factual context makes the non-movant's claim implausible, the non-movant "must come forward with more persuasive evidence to support their claim than would otherwise be necessary" to show that there is a genuine issue for trial. *Id.*

## B. Application of the Standard

### 1. The Breach of Insurance Contract Claim

The material facts are undisputed. The damage was caused by the Northridge earthquake on January 17, 1994, but was not reported until nearly two years later. The Plaintiff's failure to report the damage came in spite of the fact that he was aware of at least some damage, though not the extent of the damage, immediately after the earthquake occurred. The Defendant contends that under these facts, the Plaintiff may not maintain this action.

The Defendant argues that the action is barred, in its entirety, by the one-year limitations provision in the policy. Specifically, the policy provides that "[n]o suit or action may be brought against us unless there has been full compliance with all the terms of this policy, any suit or action must be brought within one year after the loss." Mot. Exh. 3 at 30. The policy requires that the insured give prompt notice of any loss to the property that may be covered under the policy as well as a sworn proof of loss within 60 days of the time the loss occurred.

The key issue with regard to the instant Motion is when the one-year limitation begins to run. Both parties agree that the governing standard was articulated by the California Supreme Court in *Prudential–LMI Commercial Insurance v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990). In that case, the court directly addressed the issue of when a one-year limitation in an insurance policy begins to run. Specifically, the court held:

> The insured's suit on the policy will be deemed timely if it is filed within one year after "inception of the loss," defined as that point in time when appreciable damage occurs and is or should be known to the insured, such that a reasonable insured would be aware that his notification duty under the policy has been triggered ... Determining when appreciable damage occurs such that a reasonable insured would

be on notice of a potentially insured loss is a factual matter for the trier of fact.

*Id.* at 686–87, 274 Cal.Rptr. 387, 798 P.2d 1230.

The Plaintiff points out that, in raising the policy limitation as a defense, the Defendant has the burden of proving the Plaintiff's unreasonableness by a preponderance of the evidence. *Id.* at 687, 274 Cal.Rptr. 387, 798 P.2d 1230. The Plaintiff argues that the Defendant has not satisfied this burden. Specifically, the Plaintiff asserts that there is evidence that the Plaintiff was reasonable in determining the extent of damage to his property. The Plaintiff inquired of the tenants whether they noticed any damage and sent his son to the property. Because the damage was minor, in the Plaintiff's estimation, there was no reason to investigate further nor was there cause to report the damage to the Defendant. Opp. at 12, 14. The Plaintiff maintains that whether these actions were reasonable is an issue for the jury, based on the explicit language of *Prudential–LMI. See also San Jose Crane & Rigging, Inc. v. Lexington Insurance Company,* 227 Cal.App.3d 1314, 1318, 278 Cal.Rptr. 301 (1991) (stating that "[t]he question of 'when appreciable damage occurs such that a reasonable insured would be on notice of a potentially insured loss is a factual matter for the trier of fact,' and the court erred in taking this issue away from the fact finder").

■ In response, the Defendant argues, correctly, that it cannot be the case that this issue must always be resolved by the trier of fact. As the court in *Stanton Road Associates v. Pacific Employers Insurance Co.,* 36 Cal.App.4th 333, 342–43, 43 Cal.Rptr.2d 1 (1995), observed:

Stanton's further assertion that only a trier of fact may determine the date of manifestation also misconstrues Prudential–LMI. There, the Supreme Court observed that "the date of manifestation and hence the date of inception of the loss will, in many cases, be an issue of fact for the jury to decide. When, however, the evidence

supports only one conclusion, summary judgment may be appropriate."

(quoting *Prudential–LMI,* 51 Cal.3d at 699, 274 Cal.Rptr. 387, 798 P.2d 1230). Since inception of the loss is defined "as that point in time when appreciable damage occurs and is or should be known to the insured," this language is equally applicable to the issue in this case. *Prudential–LMI,* 51 Cal.3d at 699, 274 Cal.Rptr. 387, 798 P.2d 1230.

■ The Defendant argues that the evidence supports only one conclusion, namely, that the Defendant should prevail. First, the Defendant points out that there is no dispute that the Plaintiff knew that there was at least some damage caused by the earthquake immediately after its occurrence. The term "appreciable" is defined in Black's Law Dictionary (1990) as "capable of being estimated, weighed, judged of, or recognized by the mind. Capable of being perceived or recognized by the senses. Perceptible but not a synonym of substantial."[1] If this definition were adopted, the Defendant very clearly would prevail. The Plaintiff and his son stated that there was damage to the property as a result of the earthquake. Since this damage was noticed, it was, by a literal definition, appreciable. It does not matter that the Plaintiff deemed the damage insubstantial, as substantiality is not a component of the definition of appreciable.

■ Nonetheless, even if a literal definition of "appreciable" is not applied, the Plaintiff's action must still fail. The case law has established that an insured's underestimation of the extent of damage does not excuse his failure to report such damage. For example, in *Brown Materials Co. v. Pacific Automobile Insurance Co.,* 52 Cal.App.2d 760, 765, 127 P.2d 51 (1942), the court stated that "the matter of notice was not by the terms of the policy made dependent on the apparent extent of the damage." Likewise, the court in *Magnolia Square Homeowners Association v. Safeco Insurance Co. of America,* 221 Cal. App.3d 1049, 1059, 271 Cal.Rptr. 1 (1990), held that even though the plaintiff "may not have known the full extent of the structural

---

1. The definition of "appreciable" found in a regular dictionary is essentially the same. That is, the term is defined as "capable of being noticed, estimated, or measured: noticeable." Webster's II New Riverside University Dictionary (1994).

problem," this did not excuse its failure to report the claim to the insurance company when the plaintiff was undeniably aware of at least some problems.

■ The Defendant argues, moreover, that the Plaintiff simply has not complied with the standard articulated in *Prudential–LMI.* In particular, the court held that "[t]o take advantage of the benefits of a delayed discovery rule, however, the insured is required to be diligent in the face of discovered facts. The more substantial or unusual the nature of the damage discovered by the insured (e.g., the greater its deviation from what a reasonable person would consider normal wear and tear), the greater the insured's duty to notify his insurer of the loss promptly and diligently." *Prudential–LMI,* 51 Cal.3d at 687, 274 Cal.Rptr. 387, 798 P.2d 1230.

The Court concludes that the Plaintiff was not "diligent in the face of discovered facts." The Plaintiff obviously was aware of the earthquake of January 17, 1994. Moreover, it was common knowledge that the earthquake was particularly large in magnitude and destruction. In spite of these facts, and in spite of the fact that the Plaintiff's tenants informed him of some damage to the residence, the Plaintiff failed to enter the home and inspect it. The Plaintiff did not require that the tenants themselves walk through the house and document the damage, settling instead for their report that there were no big cracks or big problems. The Plaintiff's son went to the property, observed damage that he believed was caused by the earthquake and yet failed to ask the tenants for access to the interior of the home. This is simply not diligent behavior.[2]

The Plaintiff's absence from the immediate Southern California area at the time of the earthquake does not excuse his lack of diligence. As noted above, the Plaintiff's son had ample opportunity to conduct a more detailed inspection of the property, including the interior of the house. In any event, as the court in *Abari v. State Farm Fire and Casualty Co.,* 205 Cal.App.3d 530, 535, 252 Cal.Rptr. 565 (1988), "a cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to the cause of action. Abari's status as an absentee landlord ... does not toll accrual."

To summarize, the Plaintiff's claim fails in this case due to the one-year limitation in the policy. The Plaintiff knew of appreciable damage in the days following the earthquake. This alone triggered the limitations period. It does not matter that the Plaintiff deemed such damage minor when he admittedly knew it was the type of loss covered in the policy.[3] In any event, even assuming that the damage known to the Plaintiff immediately after the earthquake did not constitute appreciable damage because it was under the deductible, the Plaintiff was not diligent in the face of discovered facts. That is, even if the damage known to the Plaintiff immediately after the earthquake did not itself trigger the duty to report, it at least required the Plaintiff to conduct a more thorough investigation. The Plaintiff knew that the earthquake had caused at least some damage to his property and yet failed to personally inspect it, have his son inspect the interior of the home, or even have the tenants conduct a

---

2. The Plaintiff cites *Abari,* 205 Cal.App.3d at 535, 252 Cal.Rptr. 565, for the proposition that "[i]t is conceivable the cracks were trivial, so that [Plaintiff] was not alerted to the gravity of the damage." However, the facts of *Abari* were substantially different. That case involved cracks that progressively worsened over a period of years. In this case, the cracks appeared virtually overnight, as a result of a forceful earthquake, such that it was not reasonable that the Plaintiff did not suspect that the damage might be more serious. Moreover, in spite of the language quoted above, the court in Abari actually held that the plaintiff was on notice from the time that he first noticed the damage. *Id.*

3. There is support for the Plaintiff's contention that if the observed damage is below the deductible, it is not a loss covered by the policy and, thus, there is no duty to report it. In *San Jose Crane & Rigging, Inc. v. Lexington Insurance Co.,* 227 Cal.App.3d 1314, 1318, 278 Cal.Rptr. 301 (1991), the court stated that damage that was under the deductible was "therefore not an insured loss." However, this is unavailing to the Plaintiff because even if the damage that he knew about did not itself trigger his duty to report, it at least required further reasonable investigation that would have yielded discovery of the full extent of the damage to the property.

walk-through and document the damage. Given the magnitude of the earthquake, something more was required of the Plaintiff.[4]

### 2. The Breach of the Covenant of Good Faith and Fair Dealing Claim

Because the Court grants the Motion as to the breach of contract claim, the bad faith claim must likewise be dismissed. As the court in *Love v. Fire Insurance Exchange,* 221 Cal.App.3d 1136, 1153, 271 Cal.Rptr. 246 (1990), stated, "a bad faith claim cannot be maintained unless policy benefits are due." Since, as discussed above, the Defendant does not owe the Plaintiff anything under the policy, the Defendant cannot be held liable for breach of the covenant of good faith and fair dealing.

### Conclusion

In sum, the Court holds that no benefits under the policy are due the Plaintiff and the breach of contract claim is dismissed. The Plaintiff was not diligent in the face of discovered facts. Although he knew the earthquake caused some damage to the property, he unreasonably failed to investigate further. Furthermore, since the Defendant does not owe the Plaintiff anything under the policy, the breach of covenant of good faith and fair dealing claim must be dismissed as well. Therefore, the Motion is granted.

IT IS SO ORDERED.

---

4. The Plaintiff argues that the fact that neither he nor his son inspected the interior of the house immediately after the earthquake is essentially a red herring. That is, the Plaintiff points out that even when he did eventually enter the house in August, 1995, he still did not report the damage because he deemed the various cracks he observed to be minor.

However, as to the duty to investigate, "[s]ubjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation." *Mangini v. Aerojet–General Corp.,* 230 Cal.App.3d 1125, 1150, 281 Cal.Rptr. 827 (1991). The Plaintiff's contention that he would not have made a report even if he had entered the house is not persuasive. At that point, the Plaintiff would have been aware of the damage to the water heater, block wall, and back door, as well as many cracks inside the home, including "one large crack in the bedroom." Opp. at 5. It would not be reasonable to stop investigating there, without at least having inspected the foundation for cracks.