[No. B181535. Second Dist., Div. Six. Jan. 26, 2006.]

RONALD NARDIZZI, Plaintiff and Appellant, v.
HARBOR CHRYSLER PLYMOUTH SALES, INC., Defendant and
Respondent.

1410

**COUNSEL**

Law Offices of Benjamin L. Hecht, Benjamin L. Hecht; Law Offices of Bryman & Apelian and Andrew C. Bryman for Plaintiff and Appellant.

Pollard Cranert Crawford & Stevens, James F. B. Sawyer; Lewis, Brisbois, Bisgaard & Smith and Roy Weatherup for Defendant and Respondent.

**OPINION**

**PERREN, J.**—Ronald Nardizzi appeals the grant of summary judgment in favor of Harbor Chrysler Plymouth Sales, Inc. (Harbor), on his complaint for personal injuries. Nardizzi's complaint alleged that Harbor caused the vehicle accident resulting in his injuries by failing to properly service the brakes of the vehicle that collided with his. The trial court granted summary judgment on the issue of causation. Nardizzi contends summary judgment was improper because he presented an expert's opinion that the accident must have been caused by Harbor's failure to properly close the "bleeder" screws after servicing, which allowed the brake fluid to leak out and ultimately led to the total brake failure that resulted in the accident in which Nardizzi was injured.

Because Nardizzi's expert failed to address the fact that the only individual who physically inspected the vehicle shortly after the accident testified that the bleeder screws were properly closed and that there were no signs of leaking from those screws, we agree with the trial court that the opinion is based on speculation and conjecture. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

On March 26, 2003, Nardizzi was driving his car in Oxnard when he was struck by a 1999 Chrysler Cirrus driven by Tara Lyn Chordigian.[1] According to Chordigian, the brakes on the Cirrus had functioned normally when she stopped at a red light just prior to the accident. When she attempted to stop at

---

[1] Chordigian and the owner of the car she was driving, Dorothie Sterling, are not parties to this appeal.

the next red light, however, the brake pedal traveled all the way to the floor and she collided with Nardizzi's car in the intersection. The police officer who investigated the accident verified that the brake pedal traveled to the floor.

After the accident, the Cirrus was towed to a garage. Lowell Lister, the garage operator, tried the brake pedal and found that it traveled to the floor. Lister also checked the brake fluid level in the master cylinder and found that it was almost empty. He checked the entire brake system for fluid leaks and found none. He also verified that the bleeder screws, which must be opened when the brake fluid is flushed out through them during servicing, were properly closed and that fluid had not leaked from them. Lister noticed some residue around the screws, but determined it was merely the result of old fluid that had not been wiped off when the brakes were last serviced. Lister did not check for an internal failure of the master cylinder, nor did he disassemble or test any of the brake system's component parts.

Nardizzi subsequently discovered that Harbor had serviced the brakes on the Cirrus, which included flushing out and replacement of the brake fluid, on February 18, 2003. The Cirrus had been driven approximately 1,300 miles from the time of servicing to the accident. According to Chordigian and Sterling, they had experienced no loss or reduction of braking power during that time.

Sterling's automobile insurance company subsequently sold the Cirrus for salvage, rendering it unavailable for any further inspection or testing. On February 13, 2004, Nardizzi sued Harbor for personal injuries and property damage. The complaint alleged that Harbor had negligently caused the accident "by failing to put brake fluid in the brake cylinders" of the Cirrus when it was serviced approximately five weeks earlier.

Harbor thereafter moved for summary judgment on the ground that Harbor's servicing of the Cirrus did not negligently cause the accident. In support of the motion, Harbor submitted the declaration of Marc Pryor, an engineer qualified as an expert witness on automotive issues. Pryor opined, based on his review of all relevant materials, including the undisputed deposition testimony of Lister that the bleeder screws on the Cirrus's brake system were fully closed at the time of the accident, that Harbor's servicing of the brakes had not caused or contributed to the failure of the brakes. Based on the evidence, Pryor concluded that there was "a spontaneous failure in the brake system, rather than the reduction of the brake fluid level over time and progressive introduction of air into the brake system." He reasoned that "[l]ow brake fluid would most likely have resulted in a noticeable but gradual loss of braking power, a 'mushy' feeling to the brake pedal upon usage, and

gradually increasing stopping distances." He also noted that a warning light should have illuminated on the instrument panel if the brake fluid had been low at the time of the accident, and that Chordigian and Sterling denied that the light had been illuminated or that they had experienced any loss or reduction of braking power between the time the car was serviced and just prior to the accident.[2]

In opposing the motion, Nardizzi offered the declaration of his own expert, James Schultz, who opined that "[s]ince Harbor claims to have filled up the vehicle's brake fluid reservoir to a proper level when it performed the brake fluid exchange procedure on February 18, 2003, the only way for the brake fluid reservoir to be found empty or near empty at the time of Mr. Lister's inspection . . . is for the brake fluid to have leaked out of the brake system. Based on the design of the vehicle's brake system and my analysis of the evidence in this case, it is my opinion within a reasonable degree of engineering certainty that brake fluid leaked out from the vehicle's brake system due to Harbor's failure to properly close or tighten the bleeder screws . . . ." Schultz also disputed Pryor's implicit conclusion that the master cylinder had spontaneously failed. He did not, however, address Lister's undisputed testimony that the bleeder screws had been properly closed, nor did he dispute the evidence indicating that no loss or reduction of brake power was experienced prior to the accident and that the light warning of low brake fluid had not been illuminated on the instrument panel. He also failed to dispute Pryor's conclusion that these circumstances would have been present had the brake fluid gradually leaked out of the bleeder screws.

The trial court granted summary judgment in favor of Harbor, reasoning as follows: "The opinion of [p]laintiff Nardizzi's expert Mr. Schulz that the accident was caused by [Harbor's] negligent failure to tighten bleeder screws that resulted in brake fluid leakage to system failure levels is not based upon evidence, but constitutes speculation and conjecture. [¶] The declaration of . . . Mr. Schultz fails to address the evidence that the vehicle had sufficient brake fluid prior to the accident, i.e., that the brakes performed well until moments before the accident, and no warning lights on the dashboard were triggered by reduced fluid levels. [¶] The declaration of Mr. Schultz also fails to address the deposition testimony of [the] mechanic, Mr. Lister, that the

---

[2] Pryor did not offer an express opinion regarding whether Harbor may have failed to properly fill the brake fluid reservoir during servicing. He did conclude, however, that the fluid could not have been too low prior to the accident because it was undisputed that there had been no loss or reduction of braking power prior to the accident, and that the warning light on the instrument panel indicating low fluid had not been illuminated. Nardizzi's expert also essentially rejected the idea that the reservoir had been insufficiently filled, concluding that the possibility was "less likely given all the facts of the occurrence." Nardizzi does not contend on appeal that there is any disputed material fact regarding this issue which would preclude summary judgment in favor of Harbor.

bleeder screws were shut and that there was no leakage from the bleeder screws, although Mr. Schultz purports to have reviewed the deposition of Mr. Lister."

## DISCUSSION

Nardizzi's sole contention on appeal is that the trial court erred in finding he failed to meet his burden of presenting evidence that a triable issue of material fact exists whether Harbor caused the accident resulting in his injuries by failing to properly close the bleeder screws on the Cirrus when it serviced the brakes approximately five weeks before the accident.

We independently review the trial court's decision to grant summary judgment, applying the same legal standard as the trial court. (*Paz v. State of California* (2000) 22 Cal.4th 550, 557 [93 Cal.Rptr.2d 703, 994 P.2d 975].) A defendant moving for summary judgment has the burden to establish a complete defense to the plaintiff's cause of action, or to show that one or more elements of the cause of action cannot be established. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–850, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493].) Once the defendant has done so, the burden shifts to the plaintiff to present admissible evidence that a triable issue of material fact exists. (*Id.* at pp. 850, 855–856; Code Civ. Proc., § 437c, subd. (p)(2).) We affirm the summary judgment if there are no material issues of fact to be determined at trial and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

 To prevail on his cause of action for negligence, Nardizzi had to show that Harbor owed him a duty of care, that they breached the duty by failing to exercise reasonable care under the circumstances, and that the breach was a substantial factor in causing his injuries. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) Harbor was entitled to summary judgment upon a showing that Nardizzi has "not established, and cannot reasonably expect to establish, a prima facie case of causation, a showing that would forecast the inevitability of a nonsuit in [Harbor's] favor." (*Id.* at p. 768.) Once Harbor met its burden of producing evidence showing that Nardizzi could not establish that the accident resulting in his injuries was caused by Harbor's negligent failure to properly close the bleeder screws during servicing, the burden shifted to Nardizzi to produce specific, admissible evidence showing that a triable issue of material fact exists on the issue of causation. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at pp. 849–850, 853, 855–856.)

In seeking to satisfy that burden, Nardizzi offered the opinion of its expert, James Schultz, that the brake fluid reservoir was nearly empty at the time of

the accident because the fluid had leaked from the bleeder screws. Schultz's opinion in this regard did not refer to Lister's testimony establishing that the bleeder screws were properly closed at the time of the accident and that there was no evidence of leaking. Schultz also failed to respond to the fact that Chordigian and Sterling expressly denied experiencing any reduction in braking power over the course of the 1,300 miles the vehicle was driven from the time of servicing to the time of the accident. According to Harbor's expert, Marc Pryor, the absence of any gradual reduction in braking power effectively precludes the possibility that brake fluid was gradually leaking from the bleeder screws. Schultz also failed to refer to Pryor's conclusion that a warning light on the instrument panel would have illuminated had the brake fluid level been low prior to the accident, and that Chordigian and Sterling denied that the light had been activated. The trial court concluded that Schultz's failure to refer to this evidence was fatal to his conclusion that the accident had been caused by the gradual leaking of brake fluid through bleeder screws that had been improperly closed at the time of servicing. Nardizzi contends the court erred in so finding.

We agree with the trial court that Schultz's opinion was insufficient to defeat summary judgment on the issue of causation. In adjudicating summary judgment motions, courts are "not bound by expert opinion that is speculative or conjectural. [Citations.] Plaintiffs cannot manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions devoid of any basis, explanation, or reasoning. [Citation.]" (*McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal. App.4th 1098, 1106 [120 Cal.Rptr.2d 23].) "The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment. [Citation.]" (*Id.* at p. 1105.) The plaintiff does not meet his burden of demonstrating a triable issue where his evidence merely provides "a dwindling stream of probabilities that narrow into conjecture." (*Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409, 1421 [37 Cal.Rptr.2d 902].)

■ In light of the evidence offered in support of summary judgment demonstrating that the bleeder screws on the Cirrus had been properly closed after servicing by Harbor, Schultz's opinion that the brake fluid leaked from the screws does not even rise to the level of speculation or conjecture. It is directly contradicted by the testimony of the only individual who examined the vehicle immediately after the accident, a mechanic who is familiar with the brake fluid flushing process and indicated that he had observed the bleeder screws fully closed and had observed no signs of leaking from the screws. Schultz also failed to address the undisputed testimony of Chordigian and Sterling that they had experienced no loss of braking power prior to the accident, which is inconsistent with any conclusion that the brake fluid had gradually leaked from the bleeder screws over the period of time from Harbor's servicing until the accident. Schultz also ignored the fact that the

warning light, which would be expected to illuminate when the brake fluid level was low, had not done so at any time prior to the accident. Although Nardizzi refers to Lister's observation of brake fluid residue on the screws, Lister also testified that the residue was the type that is created when all of the old brake fluid is not cleaned off after the flushing process, and that there was absolutely no visible evidence from which it could be inferred that fluid had been leaking through the screws. Under the circumstances, Schultz's opinion fails to create a disputed issue of material fact whether the accident was caused by Harbor's negligence.

The judgment is affirmed. Harbor shall recover its costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 10, 2006, S142199. George, C. J., did not participate therein.